# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 79

### APRIL TERM, A.D. 2026

### July 15, 2026

IN THE MATTER OF THE
TERMINATION OF PARENTAL RIGHTS
TO: CCC, CCC and CCC, minor children,

HAILEY NICOLE KELLER,

Appellant
(Respondent),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF FAMILY SERVICES,

Appellee
(Petitioner).

S-25-0306

IN THE MATTER OF THE
TERMINATION OF PARENTAL RIGHTS
TO: CCC, CCC and CCC, minor children,

COREY PHILLIP CRUZ,

Appellant
(Respondent),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF FAMILY SERVICES,

Appellee
(Petitioner).

S-25-0307

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Hailey Nicole Keller:*
>    Joshua J. Merseal, Merseal Law LLC, Laramie, Wyoming.

*Representing Corey Phillip Cruz:*
>    H. Michael Bennett, Bennett Law Group, P.C., Laramie, Wyoming.

*Representing Dept. of Family Services:*
>    Keith G. Kautz, Attorney General, Christina F. McCabe, Deputy Attorney General, Wendy S. Ross, Senior Assistant Attorney General, Callie R. Papoulas, Senior Assistant Attorney General.

*Representing Guardian ad Litem:*
>    Joseph R. Belcher, Director; Kimberly Skoutary Johnson, Chief Appellate Counsel; Wyoming Office of Guardian ad Litem.

**Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]     Hailey Nicole Keller (Mother) and Corey Phillip Cruz (Father) each challenge the district court's decision to terminate their parental rights to CCC, CCC, and CCC[1] (collectively the children) under both Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v) (2025). Father generally argues the Department of Family Services' (the Department's) actions were arbitrary and capricious for failure to follow its own policies and procedures, thereby rendering the termination of his parental rights improper. Mother challenges the district court's termination of her parental rights under both statutory subsections. We affirm the district court's order terminating both Father's and Mother's (parents') parental rights.

### ISSUES

[¶2]     We restate the dispositive issues as:

1.  Whether district court erred in terminating Father's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(iii) or (v).

2.  Whether the district court erred when it terminated Mother's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v) either by:

    a.  Not requiring the Department to prove it made reasonable efforts to reunify the family; or

    b.  Finding by clear and convincing evidence that Mother was unfit to have control and custody of the children.

### FACTS

[¶3]     Mother and Father are in a long-term relationship but have never married. They have four children together. Only three children are involved in this matter: oldest child, middle child, and youngest child. The children are currently eight, six, and four years old. In May 2022, Rawlins Police found middle child wandering the streets of Rawlins wearing only a diaper. The Department took all three children into protective custody due

---

[1] All three children have the same initials. We will refer to them as "oldest child," "middle child," and "youngest child" in their respective birth order.

to concerns with the children's lack of supervision and parents' substance use. The Department found parents neglectful, but because parents complied with the safety plan, the children returned home, and the Department closed the case.

[¶4]   Nearly a year later in April 2023, Rawlins Police responded to another report of middle child wandering the streets. After Rawlins Police returned middle child to parents' home, the Department completed an additional safety plan, and parents made repairs to the home. The Department did not take the children into protective custody.

[¶5]   The Department next interacted with the family in May 2023, when it responded to a call about a child walking alone by the railroad tracks. The Department discovered middle child wearing only a pair of large pants. Parents were not home when the Department arrived, and when Mother showed up, she appeared to be under the influence. The Department took all three children into protective custody and commenced the underlying juvenile matter.

### *Juvenile Court Neglect Proceedings*

[¶6]   As a result of the Department's May 2023 interaction with parents, the county attorney filed a neglect petition alleging Mother and Father neglected and abused oldest child, middle child, and youngest child. Following separate initial hearings, the juvenile court found the children should remain in protective custody of the Department. The juvenile court ordered parents to remain sober, submit to random drug testing, and maintain weekly contact with the Department. The juvenile court further ordered the Department to develop a safety plan for the family, conduct a multidisciplinary team (MDT) meeting, and create a pre-dispositional report for the court's review.

[¶7]   The MDT first met in early July 2023. Both parents attended the meeting and shared their statuses and concerns. The MDT also discussed parents' goals, and the Department's initial concerns with parents' inconsistent urinalysis (UA) testing, Father's dishonesty, and the parameters for visitation.

[¶8]   The Department consulted parents while developing a case plan and reviewed the plan with parents. Parents did not have questions regarding the case plan and appeared to understand its requirements. Parents and the Department completed and signed the case plan.

[¶9]   The Department filed its Predisposition Report in mid-July 2023. The juvenile court held a final disposition hearing later that month and issued an order adopting a permanency plan of reunification. It ordered visitation be at the discretion of the Department and Guardian Ad Litem.

[¶10] The case proceeded with numerous obstacles. Parents were involved in a domestic dispute in early July 2023. Parents stated alcohol was involved, emotions ran high, and Father placed his hands around Mother's neck. Mother asserted the marks on her neck lasted no longer than a day. A Department caseworker noted the marks were severe and remained visible at the July 6 MDT meeting.

[¶11] In October 2023, the Department limited parents' visitation to telephone contact with the children, as parents' continued failure to show up at and tardy arrivals for scheduled visits disappointed the children and caused anxiety, which led to behavioral concerns. In December 2023, due to the parents' inconsistent telephone communication with the oldest and middle children, and the children's resulting behaviors, the Department recommended the parents instead write letters to be read to the children, if appropriate, at therapy. Parents resumed video visits in May 2025.

[¶12] Parents' case plan compliance was sporadic. At times, parents attended counseling. Father appeared dishonest about his whereabouts and consistently failed to provide the Department with proof of employment. Parents, especially Father, inconsistently reported for UA testing, and periodically tested positive for methamphetamine and alcohol. Both parents maintained periods of sobriety but Father tested positive for methamphetamine in June 2025, two months before trial. Mother tested positive for THC in June 2025.

[¶13] To promote parents' case plan compliance, the Department and county attorney sought multiple orders to show cause. The district court held both parents in contempt but allowed parents to attend inpatient treatment in lieu of jail time. In fact, the district court placed Father on probation to attend inpatient treatment in February of 2024. The district court later revoked Father's probation because he left inpatient treatment the same day he arrived. Father eventually returned to inpatient treatment and completed an inpatient treatment program at Central Wyoming Counseling Center in July 2024.

[¶14] MDT meetings continued throughout the case. The MDT discussed parents' and the children's case plan progress and updates. When the Department took oldest and middle children into custody, oldest child was parenting middle and youngest children and middle child, a three-year-old, was non-verbal. Their therapist diagnosed oldest and middle children with an adjustment disorder. However, by trial, all the children were thriving in their foster placements.

[¶15] In April 2024, the Department informed the MDT it planned to pursue termination. The juvenile court adopted the new permanency plan of adoption at the following permanency hearing and in its associated order. Both parents objected to this change.

*Parental Rights Termination Proceedings*

[¶16]  The Department filed its Petition for Termination of Parental Rights in October 2024 (Petition). Mother denied the allegations in the Petition. Due to Father's failure to timely respond to the Petition, the district court entered default against him. Upon obtaining court-appointed counsel, Father requested the district court set aside the entry of default. The district court denied Father's request and held a four-day bench trial in August 2025.[2]

[¶17]  The district court issued its order terminating parents' parental rights in October 2025. It found the Department presented clear and convincing evidence Mother's and Father's parental rights to oldest child, middle child, and youngest child could be terminated under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (a)(v). The district court further found termination of Mother's and Father's parental rights was in the children's best interest. Father and Mother timely appealed. We consolidated their appeals for purposes of issuing this opinion.

## DISCUSSION

[¶18]  We review termination of parental rights matters as follows:

> Due to the tension between the fundamental liberty of familial association and the compelling state interest in protecting the welfare of children, application of statutes for termination of parental rights is a matter for strict scrutiny. As part of this strict scrutiny standard, a case for termination of parental rights must be established by clear and convincing evidence. Clear and convincing evidence is that kind of proof that would persuade a trier of fact that the truth of a contention is highly probable. Rigorous though this standard may be, we apply our traditional principles of evidentiary review when a party challenges the sufficiency of the evidence supporting termination. Thus, we examine the evidence in the light most favorable to the party prevailing below, assuming all favorable evidence to be true while discounting conflicting evidence presented by the unsuccessful party.

---

[2] Father does not challenge the district court's denial of his request to set aside entry of default on appeal.

*Matter of BAR*, 2026 WY 13, ¶ 23, 582 P.3d 922, 927 (Wyo. 2026) (quoting *Matter of PML*, 2024 WY 37, ¶ 19, 545 P.3d 856, 860 (Wyo. 2024)). Because "[t]he various statutory bases for termination of parental rights are separate and independent . . . we need only conclude the evidence is sufficient on one of those grounds to affirm." *Matter of MMD*, 2024 WY 35, ¶ 10, 545 P.3d 846, 849 (Wyo. 2024) (citing *Matter of ALRW*, 2023 WY 20, ¶ 19, 525 P.3d 627, 631 (Wyo. 2023)).

[¶19] The Department sought to terminate parents' parental rights on two separate statutory grounds: Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v). The district court found sufficient evidence to terminate parents' rights on both grounds. First, we address Father's challenge to the district court's termination of his parental rights. Then we turn to Mother's challenge to the district court's termination of her parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v).

## I.     *The district court did not err in terminating Father's parental rights.*

[¶20] Father argues the Department's failure to follow its own policies and procedures demonstrates its actions were arbitrary and capricious, and therefore the district court's termination of his parental rights was improper. Father does not articulate whether he challenges the district court's termination of his parental rights under Wyo. Stat. Ann. § 14-2-309(a)(iii) or (v). He instead relies on *MB v. Laramie Cnty. Dep't of Fam. Servs.*, 933 P.2d 1126 (Wyo. 1997) to assert the Department's failure to follow its policies and procedures affected his fundamental right to parent the children.

[¶21] In *MB*, we held the Department's failure to follow its policies and procedures was dispositive because the Department's shortcomings affected the mother's fundamental right to remain the legal parent of her child. *MB*, 933 P.2d at 1129–30. There, the Department created a case plan with no tasks for the mother to complete and never provided the mother a copy of that case plan. *Id.* at 1130. The Department also failed to review the case plan with the mother, to create a visitation plan, to record any directives given to the mother, and to inform the mother it would seek termination of her parental rights if she failed to comply with the case plan. *Id.*

[¶22] While the record substantiates some of the Department's alleged failures, including its failure to update the case and visitation plans, and its failure to complete risk assessments, the Department's actions in this matter are distinguishable from its actions in *MB*. Here, the Department created a case plan with tasks for both parents to complete. It also created a visitation plan. Both parents participated in the creation of the case plan and reviewed their case plan progress at quarterly MDT meetings. The Department created and filed MDT Reports following each of these meetings, and notified parents of its intent to request termination of their parental rights pending case plan compliance. The Department further testified despite the lack of updates, the parents' case plan goals would not have changed.

[¶23] Thus, to the extent Father makes a blanket challenge to the district court's termination of his parental rights based on *MB*, we conclude the facts here are distinguishable from *MB*. *See MB*, 933 P.2d at 1129–30. Unlike the mother in *MB*, the Department's shortcomings did not impermissibly affect Father's fundamental right to remain the children's legal parent. *See id.*

[¶24] Further, in the event Father also intended to assert a sufficiency of the evidence challenge based on the Department's reasonable efforts under Wyo. Stat. Ann. § 14-2-309(a)(iii), we need only conclude the evidence is sufficient on one ground to affirm the district court's termination of Father's parental rights. *MMD*, 2024 WY 35, ¶ 10, 545 P.3d at 849 (citing *ALRW*, 2023 WY 20, ¶ 19, 525 P.3d at 631). Because Father did not challenge the district court's termination of his parental rights under § 14-2-309(a)(v), he abandoned any sufficiency of the evidence challenge under that subsection.

[¶25] Absent any challenge to the sufficiency of the evidence to support the district court's ruling under Wyo. Stat. Ann. § 14-2-309(a)(v), we affirm the termination of Father's parental rights on that independent ground. *MMD*, 2024 WY 35, ¶ 10, 545 P.3d at 849 (citing *ALRW*, 2023 WY 20, ¶ 19, 525 P.3d at 631).

## II. The district court did not err when it terminated Mother's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v).

[¶26] Mother challenges the district court's termination of her parental rights under both Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v).[3] We conclude the district court did not err in terminating Mother's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v).[4]

[¶27] The Department must present clear and convincing evidence of two elements to terminate Mother's parental rights under Wyo. Stat. Ann. § 14-2-309(a)(v): "(1) the child has been in foster care under the responsibility of the State of Wyoming for fifteen of the most recent twenty-two months, and (2) the parent is unfit to have custody and control of the child." *BAR*, 2026 WY 13, ¶ 25, 582 P.3d at 927. Mother does not challenge the first element, and the record confirms this "mathematical question." *See id.* at ¶ 25, 582 P.3d at 928.

---

[3] Mother does not contest the district court's best interests determination on appeal. *See Matter of NRAE*, 2020 WY 121, ¶ 14, 472 P.3d 374, 378 (Wyo. 2020) (explaining that after the Department proves statutory grounds for termination, it must also show termination is in the child's best interests).
[4] Because we affirm the district court's termination of parents' parental rights under § 14-2-309(a)(v), we need not further address Mother's Wyo. Stat. Ann. § 14-2-309(a)(iii) challenge. *MMD*, 2024 WY 35, ¶ 10, 545 P.3d at 849 (citing *ALRW*, 2023 WY 20, ¶ 19, 525 P.3d at 631).

**A.     Wyo. Stat. Ann. § 14-2-309(a)(v) does not require reasonable reunification efforts.**

[¶28]   Neither the text of Wyo. Stat. Ann. § 14-2-309(a)(v) nor our precedent requires the Department show reasonable reunification efforts prior to terminating parental rights under that subsection. *Matter of KCS*, 2019 WY 15, ¶ 12, 433 P.3d 892, 896 (Wyo. 2019) (citing *In re SJJ*, 2005 WY 3, ¶ 32, 104 P.3d 74, 82–83 (Wyo. 2005)). While the special concurrence in *Matter of BAD*, 2019 WY 83, ¶¶ 22–39, 446 P.3d 222, 227–33 (Wyo. 2019) (Fox, J., specially concurring),[5] advocates for the inclusion of a reasonable efforts determination, "nothing can be 'decided' by a concurring opinion, which although entitled to consideration is not within the rule of stare decisis nor a decision of the court." *Boode v. Allied Mut. Ins. Co.*, 458 P.2d 653, 658–59 (Wyo. 1969); *see also Matter of JPL*, 2021 WY 94, ¶ 65, 493 P.3d 174, 187 (Wyo. 2021) (Kautz, J., specially concurring) (noting the majority opinion in *BAD*, not the special concurrence, is the controlling law on the issue).

[¶29]   Mother, for the first time on appeal, argues the district court erred when it did not require the Department to show reasonable reunification efforts under Wyo. Stat. Ann. § 14-2-309(a)(v). She relies on the special concurrence in *BAD* and argues Wyo. Stat. Ann. § 14-3-440(a) (2025) in the Child Protection Act creates a reasonable efforts prerequisite to § 14-2-309(a)(v). But § 14-3-440(a) applies to neglect proceedings, which "are entirely separate and distinct from" termination proceedings, and are conducted by the juvenile court rather than the district court. *Matter of AM-LR*, 2018 WY 76, ¶ 9, 421 P.3d 551, 554 (Wyo. 2018) (quoting *In re MN v. State*, 2003 WY 135, ¶ 37, 78 P.3d 232, 240 (Wyo. 2003)); *see SJJ*, 2005 WY 3, ¶¶ 34–35, 104 P.3d at 83–84 (finding § 14-3-440 inapplicable to a termination of parental rights proceeding).

[¶30]   Mother therefore cannot establish, either through the special concurrence in *BAD* or under Wyo. Stat. Ann. § 14-3-440(a), the district court transgressed a clear and unequivocal rule of law by making no reasonable efforts finding under Wyo. Stat. Ann. § 14-2-309(a)(v). *Int. of VS*, 2018 WY 119, ¶¶ 25–26, 429 P.3d 14, 21–22 (Wyo. 2018) (discussing the requirements to establish plain error, which include transgression of a clear and unequivocal rule of law). The district court did not err by only analyzing Mother's fitness under subsection (v).

**B.     Clear and convincing evidence supports Mother's unfitness.**

[¶31]   Our statutes do not define "unfit," but our precedent provides fitness "includes the ability to meet the ongoing physical, mental and emotional needs of the child." *BAR*,

---

[5] The Wyoming Legislature amended Wyo. Stat. Ann. § 14-2-309 in 2025 to add a ground for termination of parental rights but did not modify subsection (a)(v). 2025 Wyo. Sess. Laws 319.

2026 WY 13, ¶ 26, 582 P.3d at 928 (quoting *BAD*, 2019 WY 83, ¶ 16, 446 P.3d at 226). We determine "[w]hether a parent is fit to have custody and control of a child . . . in the context of each case" considering "the situation and attributes of the specific parent and child." *BAR*, 2026 WY 13, ¶ 26, 582 P.3d at 928. A single condition or incident alone rarely justifies termination. *Id.* (quoting *JPL*, 2021 WY 94, ¶ 24, 493 P.3d at 180). We must give consideration "to the combination of factors, incidents, and conditions that demonstrate fitness over time." *BAR*, 2026 WY 13, ¶ 26, 582 P.3d at 928 (citing *JPL*, 2021 WY 94, ¶ 24, 493 P.3d at 180). Relevant factors include:

> 1) inability to assist with therapy and recovery of a child with significant mental health needs; 2) lack of contact with and expressed lack of desire to take custody of the child; 3) contribution to the child's mental health or behavioral problems; 4) unstable living situation relating to employment or maintenance of a suitable home; 5) criminal record, particularly one primarily related to drug use, or a pattern of ongoing drug use; 6) failure to take responsibility for past conduct; 7) lack of emotional bond with the child; 8) failure to develop child-rearing skills; 9) convictions for crimes involving a potential for harming the child; 10) inability to monitor or make healthy nutritional choices or to provide a safe environment; 11) a history of surrounding [oneself] and the children with unsafe individuals; and 12) the child has become upset by or resistant to visitation with the parent.

*BAR*, 2026 WY 13, ¶ 26, 582 P.3d at 928 (quoting *LeBlanc v. State Dep't of Fam. Servs.*, 2017 WY 107, ¶ 23, 401 P.3d 932, 936 (Wyo. 2017)) (modification in original).

[¶32] A parent's fitness is determined at the time of trial, but the district court need not ignore a parent's prior conduct when determining current parental fitness. *BAR*, 2026 WY 13, ¶ 27, 582 P.3d at 928. "[P]ast behavior is 'plainly relevant' in determining fitness." *Id.* (quoting *Matter of GGMC*, 2020 WY 50, ¶ 25, 460 P.3d 1138, 1146 (Wyo. 2020)). In fact, "fitness 'is usually manifested by numerous incidents and conditions extending over a considerable length of time.'" *JPL*, 2021 WY 94, ¶ 24, 493 P.3d at 180 (quoting *BAD*, 2019 WY 83, ¶ 16, 446 P.3d at 226).

[¶33] The district court reviewed the factors listed in *LeBlanc* and concluded Mother is unfit to have custody and control of the children.[6] The findings in direct support of that

---

[6] The twelve factors listed in *LeBlanc* and repeated in termination of parental rights cases concerning parental fitness do not constitute a multi-factor balancing test and instead are "a list of examples of the

conclusion include Mother's: inability to assist with therapy and recovery of a child with significant mental health needs; lack of contact with the children; contribution to the children's mental health and behavioral problems; unstable living situation related to employment or maintenance of a suitable home; criminal record primarily related to drugs use or a pattern of ongoing drug use; failure to take responsibility for past conduct; lack of emotional bond with middle and youngest child; and failure to develop child-rearing skills. The district court also noted the oldest and middle children's emotional and behavioral problems exhibited after the resumption of video visits shortly before trial.

[¶34] On review, we must construe the evidence in a light most favorable to the Department and discount Mother's conflicting evidence to conclude whether the Department presented sufficient evidence to support the district court's determination Mother is unfit to have custody and control of the children. Wyo. Stat. Ann. § 14-2-309(a)(v); *BAR*, 2026 WY 13, ¶ 23, 582 P.3d at 927. We conclude it did.

[¶35] We recognize the steps Mother made to improve her fitness prior to trial. But "[w]hen the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield. While parents have a fundamental right to raise their children, children have a right to stability and permanency in their family relationships." *ALRW*, 2023 WY 20, ¶ 36, 525 P.3d at 634 (citations omitted). The record supports the district court's findings regarding Mother's continuing lack of fitness. Accordingly, the district court did not err when it determined sufficient evidence existed to terminate Mother's parental rights under § 14-2-309(a)(v).

## *CONCLUSION*

[¶36] Because the Department's shortcomings did not affect Father's fundamental rights to parent the children and Father abandoned any sufficiency of the evidence challenge under Wyo. Stat. Ann. § 14-2-309(a)(v), we affirm the district court's termination of Father's parental rights on that ground. We also conclude the district court committed no error by not considering reunification efforts under § 14-2-309(a)(v). In addition, sufficient evidence supports the district court's determination the Department presented clear and convincing evidence Mother is unfit to have custody and control of the children under § 14-2-309(a)(v). We therefore affirm the district court's termination of Mother's parental rights under § 14-2-309(a)(v).

---

sort of circumstances that, based on our termination of parental rights precedent, may help support the conclusion that a parent is unfit." *JPL*, 2021 WY 94, ¶ 25, n.7, 493 P.3d at 180, n.7.